CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **EUGENE RIDDICK,** ) | Case No. 7:23-cv-492 |
| Plaintiff, ) | |
| ) | |
| v. ) | **Hon. Robert S. Ballou** |
| ) | **United States District Judge** |
| **E. MILLER, et al.,** ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Eugene Riddick, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against three correctional officers at Red Onion State Prison. Riddick asserts federal constitutional and state tort claims arising from an incident in which he was stabbed by another inmate. Defendants E. Miller, J. Shephard, and Correctional Officer Fox have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 14. For the reasons set forth below, the motion to dismiss will be granted in part and denied part.

### I. Background

The following summary of the facts is taken from the complaint and an exhibit incorporated by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that a court may consider documents incorporated into the complaint by reference when ruling on a Rule 12(b)(6) motion). The facts are presented in the light most favorable to Riddick. *See Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (noting that a court reviewing a motion to dismiss must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff").

In November 2021, Riddick was housed in general population in the B6 pod at Red Onion. Compl. 2, Dkt. 1. He learned from other inmates that a "hit" had been placed on him by a

gang member for testifying against the gang member's cousin in Norfolk Circuit Court. *Id.* Riddick heard that an inmate housed in the same pod, J. Tillman, had been paid to kill him. *Id.*

On November 10, 2021, Riddick notified Defendants Miller and Shephard of the problem and requested their assistance. *Id.* He completed a written request to be moved from general population on the basis that he feared for his safety. *Id.* On the request form, Riddick explained that he had learned about a "hit" being placed on him as a result of testifying on behalf of the Commonwealth in a criminal case against a particular individual in Norfolk Circuit Court. Pl.'s Resp. Mot. Dismiss Ex. A, Dkt. 17-2. He reported being told that an inmate named J. Tillman had been paid to kill him, and he asked to be removed from general population before he got killed. *Id.*

Despite submitting the form, Riddick remained in the same cell in general population for the next 20 days. Compl. 1. He alleges that Miller and Shephard "ignored [his] plea for help" and did nothing to assist him. *Id.* at 2.

At approximately 11:30 a.m. on November 30, 2021, Riddick left his cell on the top tier of the housing unit to obtain his meal tray. *Id.* at 1. Inmates housed on the bottom tier, including Tillman, were supposed to be secured in their cells at that time, and Riddick saw defendant Fox pull on Tillman's cell door before Riddick exited his cell. *Id.* Nonetheless, Tillman got out of his cell, approached Riddick from behind, and stabbed him in the head and arm with a knife. *Id.* Riddick alleges that he suffered physical and emotional injuries as a result of the attack. *Id.* at 2.

Following the stabbing incident, Riddick was moved to a "lockup unit" where he received "a charge for fighting even though [he] was never fighting." *Id.* Although the charge was dismissed, Defendant Miller allowed Riddick to remain in lockup for 90 days without receiving a hearing. *Id.* at 2, 4. While in lockup, Riddick had "less access" to commissary,

telephone, visitation, kiosk, and recreation privileges, and he could only shower three times per week. *Id.* at 4.

Riddick claims that Miller, Shephard, and Fox violated the Eighth Amendment by failing to protect him from being assaulted by Tillman. *Id.* at 3. He claims that Miller violated his Fourteenth Amendment right to due process by allowing to be held in lockup for 90 days without a hearing. *Id.* at 4. Riddick also asserts state tort claims of assault, battery, gross negligence, and willful and wanton negligence against all three correctional officers based on their alleged failure to protect him. *Id.* at 3.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss "tests the sufficiency of a complaint." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers bare labels and conclusions will not suffice. *Id.* Although a complaint filed by a *pro se* litigant must be construed liberally, it "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## III. Analysis

### A. Federal Claims under Section 1983

Riddick filed this action pursuant to 42 U.S.C. § 1983. Section 1983 "creates a cause of action against any person who, while acting under color of state law, abridges a right arising

3

under the Constitution or laws of the United States." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Riddick alleges violations of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

1. **Failure to Protect under the Eighth Amendment**

As part of its prohibition of "cruel and unusual punishments," the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). Prison officials have a specific "duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* (internal quotation marks omitted). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

"An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014). "First, the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). An inmate "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury," *Danser*, 772 F.3d at 346–47 (internal quotation marks omitted), or "show that he is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834. At this stage, it is undisputed that Riddick's allegations are sufficient to satisfy the first element.

The second element requires a plaintiff to plausibly plead that the defendant prison officials had a "sufficiently culpable state of mind," which, in this context, means that they acted with "deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted). Deliberate indifference requires "more than mere negligence" but "less than acts or omissions

4

[done] for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. "A plaintiff establishes 'deliberate indifference' by showing that the prison official 'knew of and disregarded an excessive risk to inmate health or safety.'" *Danser*, 772 F.3d at 347 (brackets omitted) (quoting *Farmer*, 511 U.S. at 837). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw that inference." *Farmer*, 511 U.S. at 837. Additionally, "a prison official's response to a known threat to inmate safety must be reasonable." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016). "Prison officials are deliberately indifferent if they are aware that 'the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Id.* (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010)).

Viewing the facts in the light most favorable to Riddick, I conclude that he has plausibly alleged that Defendants Miller and Shephard actually knew of and disregarded an excessive risk to his safety. In cases involving inmate-on-inmate violence, courts have recognized that a prisoner can demonstrate actual knowledge of a risk of harm "by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)); *see also Cox*, 828 F.3d at 237 (concluding that there was "ample evidence" suggesting that the appellants were aware of facts from which the inference could be drawn that a substantial risk of harm existed and also drew the inference since the plaintiff "repeatedly informed the appellants that he feared for his safety and wished either to be moved from the pod or to have the other inmates moved"). Here, Riddick alleges that he notified Miller and Shephard of a specific threat to his safety and the basis for the threat—namely, that a gang member had placed a "hit" on him for testifying against a relative in state court and that Tillman, another inmate housed in the same pod, had reportedly

5

been paid to kill him. These factual allegations indicate that Miller and Shephard were "exposed to information concerning the risk" to Riddick's safety and therefore "must have known about it." *Farmer*, 511 U.S. at 842 (internal quotation marks omitted); *see also Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) (noting that "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk). The allegations in the complaint also support a reasonable inference that Miller and Shephard knew Riddick "faced a serious danger to his safety and could have averted the danger easily but failed to do so." *Cox*, 828 F.3d at 237. Rather than removing Riddick from general population or placing him in a different pod, Miller and Shephard "ignored [his] plea for help" and did nothing to protect him. Compl. 2. At this stage of the proceedings, the allegations are sufficient to state an Eighth Amendment claim against Miller and Shephard.

      The allegations against Fox, however, do not support a plausible inference of deliberate indifference on his part. Riddick acknowledges that he saw Fox pull on Tillman's cell door before leaving his own cell. He asserts that Fox must not have ensured that the door was actually locked since Tillman was able to exit the cell and attack him. Unlike the other defendants, there is no indication that Fox knew that Riddick feared for his safety in the general population pod or that Tillman posed a risk of harm to Riddick. Consequently, while Fox "may have been negligent in his actions," the complaint does not plausibly suggest that Fox "knew of and disregarded an excessive risk" to Riddick's health or safety. *Danser*, 772 F.3d at 348 (internal quotation marks omitted) (concluding that the mere fact that an officer violated his job responsibilities by leaving the prison recreation area unsupervised was insufficient to show that the officer acted with deliberate indifference). Therefore, the Eighth Amendment claim against Fox must be dismissed.

6

## 2. Denial of Due Process under the Fourteenth Amendment

Riddick alleges that Defendant Miller violated his right to due process under the Fourteenth Amendment by allowing him to remain in "lockup" for 90 days without a hearing, during which time he had "less access" to certain privileges. Compl. 3–4. Defendants have moved to dismiss this claim on the basis that the restrictions described in the complaint do not implicate a liberty interest requiring due process safeguards. I agree and will dismiss the due process claim against Miller.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

A liberty interest may arise from the Constitution itself or through state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In the prison context, the Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* To establish a state-created liberty interest in this context, an inmate must "point to a Virginia law or policy providing him with an expectation of avoiding the conditions of his confinement *and* demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life." *Prieto*, 780 F.3d at 252; *see also id.* at 249 ("*Sandin* holds that, while a state statute or policy may 'create liberty interests' giving rise to Due Process protection, this is so only if the denial of such an interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995)).

When an inmate is transferred to a more restrictive housing unit, courts consider three factors in determining whether the conditions of confinement were "harsh and atypical": (1) the magnitude of confinement restrictions; (2) whether the restrictions were for an indefinite period; and (3) whether assignment to the restrictive housing unit had any collateral consequences on the inmate's sentence. *Incumaa v. Stirling*, 791 F.3d 517, 530 (4th Cir. 2015). These factors "should be considered 'together' when making the determination." *Cartagena v. Lovell*, 103 F.4th 171, 183 (4th Cir. 2024) (quoting *Incumaa*, 791 F.3d at 530).

Riddick's complaint does not allege facts sufficient to show that the duration or conditions of his confinement in the lockup unit rose to the level of an atypical and significant hardship. During the 90-day period of confinement, Riddick had "less access" to certain privileges, including telephone use, commissary purchases, contact visitation, and recreation time. Compl. 4. Courts have held that the "the temporary *loss* of telephone, visitation, and commissary privileges" does not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Ballard v. Pierce*, 401 F. App'x 993, 994 (5th Cir. 2010) (emphasis added) (internal quotation marks omitted). Likewise, "*mere limitations* on privileges, property, and activities for restrictive housing inmates [for less than four months] do not constitute 'atypical and significant' hardship in relation to the ordinary incidents of prison life as required to create a liberty interest." *DeFour v. Webber*, No. 7:22-cv-00379, 2023 WL 6149279, at *12 (W.D. Va. Sept. 20, 2023) (emphasis added), *aff'd*, 2025 WL 227694 (4th Cir. Jan. 17, 2025); *see also Shields v. Cline*, 829 F. App'x 321, 324 (10th Cir. 2020) (concluding that an inmate failed to allege a deprivation of a protected liberty interest since he merely asserted that his placement in administrative segregation for five months was "more restrictive" and that he was "not allowed contact visitation, three hot meals a day, or access to all of the resources in

the law library"). Additionally, there is no indication that Riddick's confinement in the lockup unit had any collateral consequences on his sentence. *Incumaa*, 791 F.3d at 530.

For these reasons, the complaint does not plausibly allege that Riddick had a cognizable liberty interest in avoiding being placed in the lockup unit for 90 days. "Without a protected liberty or property interest, there can be no federal due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007); *see also Cartagena*, 103 F.4th at 184. Therefore, the Fourteenth Amendment claim against Miller must be dismissed.

## B. State Tort Claims

Riddick asserts supplemental state law claims of assault, battery, gross negligence, and willful and wanton negligence against Miller, Shephard, and Fox. The claims against Miller and Shephard are based on their failure to "act when becoming aware that [Riddick] was in danger," and the claims against Fox are based on his "fail[ure] to secure" inmate Tillman. Compl. 3.

### 1. Assault and battery

Riddick's complaint fails to state a plausible claim for assault or battery. "Virginia defines a battery as 'an unwanted touching which is neither consented to, excused, nor justified,' and an assault as 'an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery.'"* *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) (quoting *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258, 261 (Va. 2003)). Riddick does not allege that any of the defendants engaged in any unwanted touching or committed an act

---

* When a federal court exercises supplemental jurisdiction over state law claims, the court must apply the choice of law rules of the state in which it sits—in this case, Virginia. *See Atl. Specialty Ins. Co. v. Bindea*, 656 F. Supp. 3d 624, 638 (W.D. Va. 2023). Virginia's choice-of-law rules provide that "the law of the place of the wrong" supplies the substantive law for tort claims. *Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998); *see also Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3, 5, 431 S.E.2d 33, 34 (Va. 1993). Therefore, Riddick's tort claims are governed by Virginia law.

9

intended to cause harmful or offensive contact. Consequently, the claims of assault and battery must be dismissed.

    **2. Gross Negligence and Willful and Wanton Negligence**

In Virginia, three levels of negligence exist: simple negligence, gross negligence, and willful and wanton negligence. *Harris v. Harman*, 253 Va. 336, 340–41, 486 S.E.2d 99, 101 (Va. 1997). Gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487, 603 S.E.2d 916, 918 (Va. 2004). "This requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* "Because the standard for gross negligence in Virginia is one of indifference, not inadequacy," a party who exercises "some degree of care" cannot be liable for gross negligence. *Elliott v. Carter*, 292 Va. 618, 622, 791 S.E.2d 730, 732 (Va. 2016) (internal quotation marks and brackets omitted).

Willful and wanton negligence is defined as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Harris*, 253 Va. at 340–41, 486 S.E.2d at 101. Federal courts in Virginia have recognized that "the standard for willful and wanton negligence closely mirrors the subjective prong of the deliberate indifference test," *Boley v. Carmor Corr. Health Servs.*, No. 2:21-cv-00197, 2022 WL 16950920, at *10 (E.D. Va. Nov. 15, 2022) (citing *Hixson v. Hutcheson*, No. 5:17-cv-00032, 2018 WL 814059, at *9 (W.D. Va. Feb. 9, 2018)), and that "a claim of gross negligence under Virginia law requires a lesser showing . . . than a claim for deliberate indifference" under the Eighth Amendment, *Hixson*, 2018 WL 814059, at *9.

Having already determined that the complaint plausibly alleges that Miller and Shephard acted with deliberate indifference to Riddick's safety, I conclude that the claims of gross negligence and willful and wanton negligence against Miller and Shephard should not be dismissed at this stage of the proceedings. *See Carter v. Bentley*, No. 7:21-cv-00484, 2024 WL 4353087, at *10 (W.D. Va. Sept. 30, 2024) (allowing claims of gross negligence and willful negligence to proceed based on the court's decision to deny summary judgment on the plaintiff's Eighth Amendment of deliberate indifference). However, I agree with Defendants that the complaint fails to allege any action or omission on the part of Fox that would rise to the level of gross or willful and wanton negligence. The complaint suggests that Fox exercised at least "some degree of care" by pulling on Tillman's cell door after it closed. *Elliott v. Carter*, 292 Va. at 622, 791 S.E.2d at 732. Although Fox did not successfully prevent Tillman from leaving the cell, the complaint does not allege facts sufficient to show that Fox's conduct involved "a degree of negligence that would shock fair-minded persons." *Cowan*, 268 Va. at 487, 603 S.E.2d at 918; *see also Wilkins v. Montgomery*, 751 F.3d 214, 229 (4th Cir. 2014) (noting that "the Virginia cases allowing gross negligence claims to proceed to trial are . . . egregious"). Accordingly, the claims of gross negligence and willful and wanton negligence asserted against Fox will be dismissed.

## IV. Conclusion

For the reasons stated, the defendants' motion to dismiss under Rule 12(b)(6) is granted in part and denied in part. An appropriate order accompanies this opinion.

Entered:  March 28, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

11